T.C. Memo. 1998-291


UNITED STATES TAX COURT


FRANKLIN P. AND NONA COADY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4722-97.                    Filed August 6, 1998.


<u>Lance A. Hulbert</u>, for petitioners.

<u>Gregory M. Hahn</u>, for respondent.


MEMORANDUM OPINION


LARO, <u>Judge</u>:  This case is before the Court fully
stipulated.  See Rule 122.  Franklin P. and Nona Coady petitioned
the Court to redetermine respondent's determination of a $49,531
deficiency in their 1994 Federal income tax.  Following
concessions, we must decide whether petitioners' 1994 gross
income includes $373,307 that was awarded to Ms. Coady as

compensation for a wrongful termination, or a lesser amount that is net of the legal fees and other costs that she incurred to recover this award. We hold it is the greater amount. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## Background

All facts have been stipulated.[1] The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. When petitioners petitioned the Court, they resided in Lake Havasu City, Arizona. They are husband and wife, and they filed a 1994 Form 1040, U.S. Individual Income Tax Return, using the filing status of "Married filing joint return".

On May 5, 1990, Ms. Coady was discharged from her employment with Alaska Housing Finance Corporation (AHFC). Thereafter, while she resided in Alaska, she retained an attorney in the Alaska office of the law firm of Hellen, Partnow & Condon (HPC) to represent her in a wrongful termination suit against AHFC. According to the terms of that representation:

> [Ms. Coady is] responsible for all costs incurred,
> e.g. filing fees, long distance telephone calls,

---

[1] Petitioners ask the Court to find a fact from a letter that they attached to their posttrial brief. We decline to do so. This letter is not evidence. Rule 143(b); see also Boyd Gaming Corp. v. Commissioner, T.C. Memo. 1997-445.

telefax transmissions, photocopies, deposition charges, witness fees, computer research fees, appraiser's fees, travel expenses for attorneys or witnesses, expert consultation charges, cost of the investigation.

Attorney time will be compensated on the basis of the following contingent fee schedule:

33-1/3% if recovery is arrived at without appeal of any judgment.

45% in the event that any judgment is appealed and representation continues after a notice of appeal is filed.

On or about April 13, 1991, HPC, on behalf of Ms. Coady, filed suit against AHFC and certain individuals in the Superior Court for the State of Alaska, alleging damages arising from a wrongful termination of Ms. Coady's employment. Following a non-jury trial, the court held AHFC, but not the individuals, liable for Ms. Coady's wrongful termination and awarded her the following damages:

| | |
|---|---|
| Lost past earnings | $89,225 |
| Lost future earnings | 76,980 |
| Lost fringes and lost pension | 207,102 |
| Total | 373,307 |

AHFC paid Ms. Coady the awarded damages on November 7, 1994, issuing her a check for $259,611 and withholding $113,696 for Federal and State taxes. In the same year, Ms. Coady paid HPC legal fees and litigation costs totaling $221,338; of this amount, $124,436 represented HPC's contingent fee (33-1/3% x $373,307) and $96,903 represented litigation costs. AHFC issued Ms. Coady a 1994 Form W-2, Wage and Tax Statement, reporting that

it paid her the $373,307 award as "wages, tips, other compensation."

On their 1994 Form 1040, petitioners included the $373,307 award in wages, and claimed a $284,082 "above-the-line" deduction for the amount of the award that was not paid on account of past earnings. Petitioners claimed and reported on their return that the $284,082 was received by Ms. Coady as self-employment income, and they claimed that $168,217 of the legal fees and costs was deductible from this income, resulting in net income from self-employment of $115,865.[2] Petitioners claimed a miscellaneous itemized deduction of $53,121 with respect to the remaining legal fees and costs.

Respondent determined, and reflected in a notice of deficiency issued to petitioners on December 10, 1996, that petitioners' 1994 gross income includes the total award of $373,307. Respondent also determined that petitioners' legal fees and costs totaling $221,338 were deductible as a miscellaneous itemized deduction subject to the 2-percent floor under section 67. Petitioners concede that none of the award, legal fees, or costs was attributable to self-employment.

Discussion

---

[2]Petitioners' allocation to self-employment of legal fees and costs bears the same ratio (as rounded) as petitioners' allocation to self-employment of the award; i.e., $168,217/$221,338 = $284,082/$373,307.

Petitioners argue that their 1994 gross income does not include the entire $373,307 award. According to petitioners, $221,338 of the award is excluded from their gross income because it was paid to Ms. Coady's counsel, HPC, under the contingent fee agreement. Petitioners rely on Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), revg. in part and affg. in part 28 T.C. 947 (1957).[3] In the Cotnam case, the taxpayer had entered into a contingent fee agreement with her attorneys, under which the taxpayer agreed to pay the attorneys 40 percent of any amount recovered on a claim that they prosecuted on her behalf. The taxpayer received a judgment on the claim, and a check in the amount of the judgment was made payable to both her and her attorneys. The attorneys retained their share of the proceeds, and they remitted the rest to the taxpayer. In holding that the amount retained by the attorneys was not includable in the taxpayer's gross income, the Court of Appeals for the Fifth Circuit concluded that, under applicable State (Alabama) law, the contingent fee agreement operated to assign to the attorneys an equitable lien and interest as to 40 percent of the judgment. As stated in the provision of the Alabama Code relied upon by the Court of Appeals to reach its conclusion:

> 2. Upon suits, judgments, and decrees for money, * * * [attorneys] shall have a lien superior to all

---

[3] See also Davis v. Commissioner, T.C. Memo. 1998-248 (following Cotnam as to the law of the circuit).

liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment or decree, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them.  [Id. at 125 n.5 (quoting 46 Ala. Code sec. 64 (1940); quotation marks omitted).]

We disagree with petitioners that Cotnam v. Commissioner, supra, controls the Court's decision herein.  In our case, the relevant section 34-35-430 of the Alaska Code, i.e., the statute that is applicable here, provides as follows:

Sec. 34-35-430. Attorney's lien. (a) An attorney has a lien for compensation, whether specially agreed upon or implied, as provided in this section
(1) first, upon the papers of the client that have come into the possession of the attorney in the course of the professional employment;
(2) second, upon money in the possession of the attorney belonging to the client;
(3) third, upon money in the possession of the adverse party in an action or proceeding in which the attorney is employed, from the giving of notice of the lien to that party;
(4) fourth, upon a judgment to the extent of the costs included in the judgment or, if there is a special agreement, to the extent of the compensation specially agreed on, from the giving of notice of the lien to the party against whom the judgment is given and filing the original with the clerk where the judgment is entered and docketed.
(b) This lien is, however, subordinate to the rights existing between the parties to the action or proceeding.  [Alaska Stat. sec. 34-35-430 (Michie 1996).]

This provision stands in marked contrast to the provision of the Alabama Code relied upon by the Court of Appeals for the Fifth Circuit in the Cotnam case.  Although both provisions give an

attorney a lien to secure his or her compensation, the Alaska provision, unlike the Alabama provision, does not give attorneys the same right and power over suits, judgments, and decrees as their clients had or may have. In contrast to a client subject to the Alabama provision, a client subject to the Alaska provision retains all proprietary rights in his or her claim, subject to a statutory lien held by the attorney on any proceeds from the claim. See, e.g., Hagans, Brown & Gibbs v. First Natl. Bank, 783 P.2d 1164, 1168 (Alaska 1989) ("the claim belongs to the client and not to the attorney; the client has a right to compromise or even abandon his claim if he sees fit to do so"); see also Phillips v. Jones, 355 P.2d 166, 171 (Alaska 1960) (intent of Alaska attorney lien provision is to give attorneys security for their efforts through a lien on the subject of the action). The Alaska provision also subordinates an attorney's lien "to the rights existing between the parties to the action or proceeding", whereas the lien of an attorney under the Alabama provision is "superior to all liens but tax liens". In fact, the Alaska provision is similar to provisions of the Nebraska and South Dakota Codes, which we held in Petersen v. Commissioner, 38 T.C. 137, 151-152 (1962), were distinguishable from the provisions of the Alabama Code considered by the Court of Appeals

for the Fifth Circuit in <u>Cotnam v. Commissioner</u>, <u>supra</u>.[4]  See
also <u>Baylin v. United States</u>, 43 F.3d 1451, 1455 (Fed. Cir. 1995)
(Maryland attorney lien statute does not give attorney an
ownership interest in claim of his or her client); <u>Estate of
Gadlow v. Commissioner</u>, 50 T.C. 975, 979-980 (1968) (Pennsylvania
law distinguishable from Alabama statute applied in <u>Cotnam</u>).

We hold that Ms. Coady's award, undiminished by the amount
that she paid her attorneys, is includable in petitioners' 1994
gross income under the principle of <u>Lucas v. Earl</u>, 281 U.S. 111
(1930).[5]  Accord <u>Estate of Gadlow v. Commissioner</u>, <u>supra</u> at
979-980; <u>Petersen v. Commissioner</u>, <u>supra</u> at 151-152; <u>Hardin v.
Commissioner</u>, T.C. Memo. 1997-202; <u>Martinez v. Commissioner</u>,

---

[4] The Nebraska provision as set forth in <u>Petersen v.
Commissioner</u>, 38 T.C. 137, 152 n.9 (1962), provided:

> <u>§7-108. Attorney's liens</u>.  An attorney has a
> lien for a general balance of compensation
> upon any papers of his client which have come
> into his possession in the course of his
> professional employment; and upon money in
> his hands belonging to his client, and in the
> hands of the adverse party in an action or
> proceeding in which the attorney was employed
> from the time of giving notice of the lien to
> that party.

The South Dakota provision was similar to the Nebraska provision.
<u>Id.</u>

[5] We reject petitioners' claim that this principle is
inapplicable because Ms. Coady's claim was "contingent" or
"uncertain".  The cases cited by petitioners to support that
claim are distinguishable on their facts.

T.C. Memo. 1997-126; <u>Alexander v. Commissioner</u>, T.C. Memo. 1995-51, affd. 72 F.3d 938, 946-947 (1st Cir. 1995).  We have considered all arguments by petitioners for a contrary holding, and, to the extent not mentioned above, find them to be without merit.  To reflect concessions by respondent,

<u>Decision will be entered</u>

<u>under Rule 155</u>.