T.C. Summary Opinion 2001-44


UNITED STATES TAX COURT


BRIAN DAVID NELSON AND SHAUNA LEE NELSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10322-99S.                    Filed April 2, 2001.


Brian David Nelson and Shauna Lee Nelson, pro sese.

<u>Robert V. Boeshaar</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year in issue.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined a deficiency of $2,520 in petitioners'

1995 Federal income tax.  The issues for decision are:
(1) Whether proceeds received in settlement of an action under
the Fair Labor Standards Act of 1938, 29 U.S.C. secs. 201, 216(b)
(1994) (FLSA), are excludable from gross income as damages
received on account of personal injury or sickness within the
meaning of section 104(a)(2); and (2) whether petitioners may
exclude from gross income the portion of the settlement proceeds
retained by the attorneys representing the plaintiffs in the FLSA
action.

## Background

The stipulation of facts and the accompanying exhibits are
incorporated herein by reference.  Petitioners resided in
Vancouver, Washington, at the time the petition in this case was
filed.

In 1993, petitioner Brian David Nelson (petitioner), along
with 266 other employees of PayLess Drugstores, Inc. (PayLess),
filed a class action lawsuit under the FLSA in the United States
District Court for the District of Idaho.  The class alleged
that, despite managerial-sounding titles and job descriptions,
they were in fact hourly employees who were required to work
overtime without compensation.  As relief, the class requested to
be paid time-and-a-half for all hours worked in excess of the
statutory limit of 40 hours, liquidated damages in an amount

equal to the unpaid overtime compensation, attorney's fees, and costs.

In January 1995, the case settled for a payment of five million dollars, and the plaintiffs submitted a Motion for Judicial Approval of the Class Settlement.  In their memorandum in support of the motion, the plaintiffs explained how the cash settlement was to be distributed among the various plaintiffs. The memorandum specifies that the distributions were to be calculated as follows:

(1) All plaintiffs receive a $1,000 allocation, appropriate individuals receive $3,000 deposition scheduling allocation and named plaintiffs receive a $15,000 representation allocation.

(2) Each individual's claim is valued based on the fluctuating average workweek calculation.

(3) The hours claimed are taken from the interviews of plaintiffs by plaintiffs's counsel.

(4) The hourly rate is determined from PayLess payroll records.

(5) All overtime hours an individual claims between two years prior to the consent date and November 1, 1992 are given 95% of calculated value to discount for a potential finding of no liability.

(6) All overtime hours an individual claims for the time period between two and three years of their consent date are given 50% of calculated value to discount for a finding of no liability.

(7) All overtime hours claimed for the time period between March 8, 1990 and three years prior to an individual's consent date are given 5% of calculated value to recognize the limited, although existing, possibility that plaintiffs could have recovered for this time period.

(8) The individual's claim is then totaled.

(9) The remaining portion of the settlement, that is, the total settlement minus the amount allocated for participation and back wages is apportioned in the same ratio as that of each individual's calculated back wages to the total of the calculated back wages for the class.

(10) The sum of the participation allocation, the back wages allocation and the liquidated damages allocation equals each individual's "Total Recovery."

(11) From the individual's total recovery the contractual attorney fee is then subtracted.

(12) Each individual is then allocated a share of the costs of the litigation based on the same ratio as that person's total recovery to the total settlement proceeds.  That share of the costs is then subtracted.

(13) This leaves each individual with a Net Cash Recovery.

The settlement allocation was approved by the court on January 20, 1995.  On January 21, 1995, the plaintiffs entered into a Settlement Agreement and Release (settlement agreement) executed by PayLess and the class representatives and approved by the court.  The release states the following:

3.  Release of PayLess by the petitioner.

   In exchange for the payment of the amount set forth in paragraph 7 below, . . . Plaintiffs . . . hereby release and discharge PayLess . . . from all actions, claims, or demands for damages, liabilities, costs, or expenses, which the Plaintiffs, individually or collectively, have against PayLess on account of, or in any way arising out of the claims that were asserted or that could have been asserted in the Lawsuit by the Plaintiffs, which Lawsuit is hereby acknowledged as not fully plead [sic], further including, but not limited to, claims for personal injuries, intentional infliction of emotional distress, negligent infliction

of emotional distress, and from all known claims, whether based in tort, statute or contract, which are based in whole or in part, or arise out of, or in any way relate to: (1) the Lawsuit; and (2) anything done or allegedly done by PayLess arising out of, or in conjunction with or relating to, the employment of any and/or all Plaintiffs prior to November 1, 1992 by PayLess.

The settlement agreement further provides that "All Settlement Proceeds are paid to Plaintiffs on account of personal injuries."

On March 15, 1995, pursuant to the settlement agreement, petitioner received a payment of $24,076 ($7,935 in back wages and $16,141 in liquidated damages), from which attorney's fees of $8,314 were deducted leaving petitioner with a net payment of $15,762.

Petitioners did not report any amount from the settlement on their 1995 Federal income tax return. As reflected in the notice of deficiency, respondent determined that petitioners must include the full $24,076 in settlement proceeds in their 1995 gross income and allowed petitioners an $8,314 miscellaneous itemized deduction for attorney's fees to collect back wages. Petitioners argue that all the settlement proceeds are excludable because they were paid "to Plaintiffs on account of personal injuries".

## Discussion

Section 61 provides for the inclusion in gross income of all income from whatever source derived, except as otherwise provided. This definition of gross income is broadly construed,

and any statutory exclusions from income must be narrowly construed. See <u>Commissioner v. Schleier</u>, 515 U.S. 323, 327-328 (1995). Section 104(a)(2) provides an exclusion for "any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".

To be excludable under section 104(a)(2), payments received in settlement must be (1) received "on account of personal injuries or sickness" and (2) received for claims "based upon tort or tort type rights". <u>Commissioner v. Schleier</u>, <u>supra</u> at 333; sec. 1.104-1(c), Income Tax Regs. Both of these requirements must be satisfied in order for the exclusion to apply. See <u>Commissioner v. Schleier</u>, <u>supra</u>.

The term "personal injuries" has been interpreted as including nonphysical injuries such as those affecting emotions, reputation, or character.[1] <u>United States v. Burke</u>, 504 U.S. 229, 235 n.6 (1992). Personal injuries are distinguished from "legal injuries of an economic character" such as those arising out of the unlawful deprivation of full wages earned for services performed or the unlawful deprivation of the opportunity to earn wages through wrongful termination. <u>Id.</u> at 239.

---

[1] The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1755, 1838, amended sec. 104(a)(2) to limit the exclusion to "personal physical injuries or physical sickness". The amendment does not apply to 1995 and thus has no bearing on the case herein.

We look to the nature of the claim that was the basis of the settlement to determine whether the payments petitioner received are excludable under section 104(a)(2).  See id. at 237; Thompson v. Commissioner, 89 T.C. 632, 644 (1987), affd. 866 F.2d 709 (4th Cir. 1989).  The critical question is "in lieu of what was the settlement amount paid?"  Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).  This determination is factual.  See Stocks v. Commissioner, 98 T.C. 1, 11 (1992).

When the settlement agreement expressly allocates the settlement proceeds between tortlike personal injury damages and other damages, the allocation is generally binding for tax purposes to the extent that the agreement is entered into by the parties in an adversarial context at arm's length and in good faith.  See Bagley v. Commissioner, supra; Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part, revd. in part, and remanded on other grounds 70 F.3d 34 (5th Cir. 1995); Threlkeld v. Commissioner, 87 T.C. 1294, 1306-1307 (1986), affd. 848 F.2d 81 (6th Cir. 1988).  Even an express allocation, however, may be disregarded if the facts and circumstances surrounding a payment indicate the payment was intended by the parties to be for a different purpose.  See Bagley v. Commissioner, supra; Robinson v. Commissioner, supra;

Threlkeld v. Commissioner, supra at 1307; Burditt v. Commissioner, T.C. Memo. 1999-117.

The settlement agreement in the instant case expressly provides: "All Settlement Proceeds are paid to Plaintiffs on account of personal injuries." The terms of the settlement agreement, however, do not reflect the substance of the settlement. See Burditt v. Commissioner, supra.

The 1993 complaint filed in the action underlying this case was brought under the FLSA to recover unpaid overtime compensation, liquidated damages, and attorney's fees. No claims of personal injury were made in the complaint.

The FLSA does not provide for personal injury compensation. See Jacobs v. Commissioner, T.C. Memo. 2000-59. The FLSA was enacted to establish minimum wages and maximum hours for employees. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945). The only relief available under the FLSA for excessive hours worked is the payment of back wages and liquidated damages. See 29 U.S.C. sec. 216(b) (1994). The liquidated damages are intended to compensate employees for damages too obscure or difficult to estimate caused by the delay of wage payment. See Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-584 (1942).

Petitioner's recovery of back wages is not attributable to personal injury or sickness. See Schleier v. Commissioner, supra

at 330 (finding that back wages received in action under ADEA were not on account of personal injury). The back wages were paid to compensate for overtime work, not to compensate petitioner for personal injury. Petitioner's recovery of liquidated damages likewise is not on account of personal injury or sickness. See Jacobs v. Commissioner, supra.

In their memorandum supporting their request for judicial approval of the class settlement, the plaintiffs in the underlying case state that their method of distributing the settlement award is not meant to classify the money received but is "merely a mechanical method of apportioning the lump sum settlement among the class for the personal injuries each has claimed." The memorandum, however, clearly indicates that the settlement is based on the claims brought under the FLSA and provides no information regarding any personal injuries.

Although PayLess undoubtedly negotiated its total liability to the plaintiffs in the lawsuits, petitioners have failed to present any evidence that the allocation of the entire proceeds to personal injuries was the result of adversarial negotiations. Moreover, the method for apportioning the settlement among the class is based on each individual's level of participation in the lawsuit and on the overtime hours claimed. This method of allocation is consistent with an intent to compensate the plaintiffs for the economic harm they suffered as a result of

PayLess' refusal to compensate them for overtime work.

We are unpersuaded by the language in the settlement agreement indicating that the lawsuit giving rise to the settlement was "not fully plead [sic]". Petitioners presented no evidence that petitioner suffered personal injury or sickness as a result of his employment with PayLess. Petitioner Shauna Lee Nelson testified: "I think PayLess realized that they could have been held liable for * * * many things, including discrimination and, you know, alienation of affections". Petitioners also point to the broad language in the settlement agreement releasing PayLess from all claims that could have been pled in the lawsuit. There must be a direct link, however, between the personal injury or sickness and the recovery of damages for the section 104(a)(2) exclusion to apply. See Commissioner v. Schleier, 515 U.S. 323, 330 (1995). The language contained in the settlement agreement is insufficient to establish a link between the settlement agreement and any personal injuries.

We thus find that petitioner's settlement proceeds of back wages and liquidated damages were not received on account of personal injury and therefore do not qualify for exclusion under section 104(a)(2).

Petitioners must also include in their gross income the portion of petitioner's settlement proceeds retained by the attorneys representing the plaintiffs in the underlying action.

Although petitioner did not physically receive the portion of the settlement proceeds used to pay attorney's fees, he did receive the benefit of those funds in the form of payment for the services required to obtain the settlement.

In <u>Kenseth v. Commissioner</u>, 114 T.C. 399 (2000), we reconsidered the view of the U.S. Court of Appeals for the Fifth Circuit regarding contingent fee agreements as expressed in <u>Cotnam v. Commissioner</u>, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957), in light of <u>Estate of Clarks v. United States</u>, 202 F.3d 854 (6th Cir. 2000), and the views of other Courts of Appeals.  We concluded that we would continue to adhere to our holding in <u>O'Brien v. Commissioner</u>, 38 T.C. 707 (1962), affd. per curiam 319 F.2d 532 (3d Cir. 1963), that contingent fee agreements "come within the ambit of the assignment of income doctrine and do not serve * * * to exclude the fee from the assignor's gross income." <u>Kenseth v. Commissioner</u>, <u>supra</u> at 412.  We also declined to examine the effect of States' attorney's lien statutes to decide the case. See <u>id.</u>

Thus, petitioners cannot avoid income tax by an anticipatory assignment of a portion of petitioner's settlement proceeds to his attorneys.  See <u>Coady v. Commissioner</u>, 213 F.3d 1187, 1190 (9th Cir. 2000), affg. T.C. Memo. 1998-291; <u>Kenseth v. Commissioner</u>, <u>supra</u>.  Furthermore,  petitioners have presented no

evidence indicating that the fee arrangement with petitioner's attorneys was of a contingent nature.

Accordingly, petitioners must include in their gross income their share of the gross proceeds received pursuant to the settlement agreement with PayLess. The proceeds allocable to attorney's fees are deductible subject to certain statutory limitations as determined by respondent.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.